IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-cv-1492 |
| v. | ) | |
| | ) | |
| HOYD BUILDERS, INC., DEAN THEO, and DENA THEO, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its attorneys, Dana A. Rice and Adam P. Joffe of Traub Lieberman Straus & Shrewsberry LLP, and for its Complaint for Declaratory Judgment against Defendants Hoyd Builders, Inc. ("Hoyd"), Dean Theo ("Mr. Theo"), and Dena Theo ("Ms. Theo"), it states as follows:

## THE PARTIES

1.      Nautilus is, and at all relevant times has been, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona. At all times relevant hereto, Nautilus was an insurer whose policies may be sold in Illinois.

2.      Hoyd is, and at all relevant times has been, a corporation organized under the laws of Illinois with its principal place of business in Long Grove, Illinois.

3.      Mr. Theo is, and at all relevant times has been, a citizen of Northbrook, Cook County, Illinois.

4.      Ms. Theo is, and at all relevant times has been, a citizen of Northbrook, Cook County, Illinois. (Mr. Theo and Ms. Theo will hereinafter be referred to collectively as the "Theos.")

1

## JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Specifically, the case relates to an insurance policy providing well in excess of $75,000 in coverage, and the underlying lawsuit seeks damages in excess of $75,000.

## VENUE

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to this litigation occurred in this judicial district, and because at least one of the defendants is a resident of this judicial district.  Specifically, the subject insurance policy was issued and delivered in this judicial district, the subject construction project occurred in this judicial district, and the underlying lawsuit is pending in a state court in this judicial district.

## THE UNDERLYING LAWSUIT

7.      On or about September 18, 2020, the Theos filed a Complaint for Declaratory Judgment and for Other Relief against Hoyd, Braveheart Construction Group, LLC ("Braveheart"), Nistler Carpentry, Inc. ("Nistler"), Lake Zurich Building Advisor, LLC ("Lake Zurich"), Adam Shaf ("Shaf"), and Preferred Contractors Ins. Co. ("Preferred Contractors") in the Circuit Court of Cook County, Illinois under Case Number 2020 CH 05927 ("*Theo* Lawsuit").  (A true and correct copy of the complaint in the *Theo* Lawsuit is attached hereto as **Exhibit A.**)

8.      The *Theo* Lawsuit arises from alleged construction defects at a single family home located at 611 Voltz Road, Northbrook, Illinois 60062 (the "Premises").  (Ex. A.)

9.      The *Theo* Lawsuit alleges that the Theos are the owners of the Premises.  (Ex. A, ¶ 1.)

10.    The *Theo* Lawsuit alleges that Hoyd was hired to be the general contractor for the construction of the Premises.  (Ex. A, ¶ 2.)

11.    The *Theo* Lawsuit alleges that, on or about May 25, 2019, Hoyd entered into a subcontract with Braveheart for work on the Premises.  (Ex. A, ¶ 3.)

12.    The *Theo* Lawsuit alleges that Lake Zurich is a subsidiary or otherwise associated with Braveheart.  (Ex. A, ¶ 4.)

13.    The *Theo* Lawsuit alleges that Shaf was the principal of both Braveheart and Lake Zurich.  (Ex. A, ¶ 5.)

14.    The *Theo* Lawsuit alleges that Nistler was hired by either Braveheart or Lake Zurich to perform some of the services contracted for the Premises by Braveheart.  (Ex. A, ¶ 6.)

15.    The *Theo* Lawsuit alleges that Preferred Contractors is a general liability insurer that issued a general liability insurance policy to Braveheart and Lake Zurich, which named the Hoyd, the Theos, and the Premises as additional insureds.  (Ex. A, ¶ 7.)

16.    The *Theo* Lawsuit further alleges that, on November 25, 2019, an inspection of the Premises revealed significant damage as a result of faulty workmanship throughout the wood framing of the Premises.  (Ex. A, ¶ 8.)

17.    The *Theo* Lawsuit alleges that, as a result, the Theos have been required to spend substantial sums of money to engage other contractors to remedy the defective work at the Premises. (Ex. A, ¶ 9.)

18.    The *Theo* Lawsuit alleges that, during their time at the Premises and in the course of their work, Braveheart, Lake Zurich, and/or Nistler allegedly failed to perform the framing in a workmanlike manner and caused substantial delay in the completion of the project.  (Ex. A, ¶ 10.)

19.     The *Theo* Lawsuit further alleges that Hoyd "likewise failed to exercise proper care in its duty to oversee and supervise the work of the subcontractors at the Premises thereby causing substantial damages and delays." (Ex. A, ¶ 11.)

20.     The *Theo* Lawsuit alleges that Hoyd, Braveheart, Lake Zurich, Shaf, and Nistler breached their respective contracts by: (1) failing to perform the work in a workmanlike manner, (2) failing to use licensed subcontractors, (3) causing substantial delay on the completion of the project; and (4) failing to provide the necessary documents and contract provisions as required by the Illinois Home Repair and Remodeling Act. (Ex. A, ¶ 12.)

21.     The *Theo* Lawsuit further alleges that, "to complete the scope of the work at the Premises, to repair the deficient work, and damaged property all caused by Hoyd, Braveheart, [Lake Zurich], Shaf, and Nistler, the Theos have been required to retain the services of additional contractors for an estimated cost of at least $165,000.00 to repair and finish the work at the Premises. As of September 10, 2020, the Theos have spent approximately $89,300.00, however the work and repairs are ongoing." (Ex. A, ¶ 13.)

22.     The *Theo* Lawsuit also seeks "a refund from Hoyd, Braveheart, [Lake Zurich], Shaf and Nistler for work paid for and not performed and for materials paid for and not delivered." (Ex. A, ¶ 13.)

23.     The *Theo* Lawsuit also alleges that the Theos are currently incurring monthly rent of $4,050.00 from 2018 to the present for the lease of a temporary residence. (Ex. A, ¶ 14.)

24.     In total, the *Theo* Lawsuit seeks damages totaling $334,320.00. (Ex. A, Prayer for Relief.)

25.     In Count I, the *Theo* Lawsuit asserts a claim for breach of contract against Hoyd, Braveheart, Lake Zurich, Shaf, and Nistler. (Ex. A, ¶¶ 16-20.)

26.     In Count II, the *Theo* Lawsuit asserts a claim for a violation of the Illinois Consumer Fraud and Deceptive Practices Act and the Home Repair and Remodeling Act against Hoyd. (Ex. A, ¶¶ 21-29.)

27.     Count II alleges violations based on: (1) failure to present the Theos with a contract containing any of the information required by Section 15 of the Home Repair Act, (2) failing to provide the Theos with a "Home Repair: Know Your Consumer Rights" pamphlet as required by Section 20 of the Home Repair Act, and (3) failing to carry sufficient insurance or to provide proof of insurance. (Ex. A, ¶¶ 21-29.)

28.     In Count III, the *Theo* Lawsuit alleges a breach of the implied warranty of good workmanship against Hoyd, Braveheart, Lake Zurich, Shaf, and Nistler. (Ex. A, ¶¶ 30-35.)

29.     In Count IV, the *Theo* Lawsuit seeks declaratory judgment that Preferred Contractors failed to provide coverage for the damage or agree to any appropriate scope for the repairs and other losses suffered by the Theos. (Ex. A, ¶¶ 36-42.)

30.     In Count V, the *Theo* Lawsuit alleges statutory bad faith against Preferred Contractors. (Ex. A, ¶¶ 43-47.)

31.     In Count VI, the *Theo* Lawsuit alleges a breach of contract by Preferred Contractors. (Ex. A, ¶¶ 48-52.)

32.     Counts IV, V, and VI of the *Theo* Lawsuit are not asserted against Hoyd.

## THE NAUTILUS POLICIES

33.     Nautilus issued a commercial general liability insurance policy to Hoyd under policy number PN024285 for the policy period of April 23, 2019 to April 23, 2020 ("19-20 Policy"). (A true and correct copy of the 19-20 Policy is attached hereto as **Exhibit B.)**

34.     The 19-20 Policy was then renewed under policy number PN027567 for the policy period from April 23, 2020 to April 23, 2021 ("20-21 Policy").  (A true and correct copy of the 20-21 Policy is attached hereto as **Exhibit C.**)  (The 19-20 Policy and the 20-21 Policy are hereinafter referred to collectively as the "Policies").

35.     The Policies provide, among other things, commercial general liability coverage subject to a $1,000,000 limit of liability per occurrence and a general aggregate limit of $2,000,000. (Exs. B and C.)

<u>COUNT I</u>

<u>NO "PROPERTY DAMAGE"</u>

36.     Nautilus adopts and realleges the allegations in paragraphs 1 through 35 of its Complaint for Declaratory Judgment as paragraph 36 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

37.     Coverage A of the Policies[1] provides, in relevant part, the following with respect to the liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
* * *
**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

   **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to

---

[1] Coverage B of the CGL Coverage of the Policies provide coverage for 'personal and advertising injury.' As the *Theo* Lawsuit does not assert claims relating to 'personal and advertising injury,' Coverage B of the Policies is not germane to this lawsuit.

which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *

* * *

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

* * *

(Exs. B and C.)

38. The Policies defines the term "property damage" as follows:

**SECTION V – DEFINITIONS**

* * *

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

(Exs. B and C.)

39. The totality of the *Theo* Lawsuit (as it relates to Hoyd) arises from allegations that Hoyd failed to perform construction work in a workmanlike manner and violated the Illinois Consumer Fraud and Deceptive Practices Act and the Home Repair and Remodeling Act. (Ex. A.)

40. Pursuant to the plain language of the Policies, the claims asserted in the *Theo* Lawsuit do not constitute "property damage", as that term is defined in the Policies, and, as such, the claims asserted in the *Theo* Lawsuit do not trigger coverage under the terms of the Policies.

7

41.     Accordingly, Nautilus had and has no duty to defend and/or indemnify Hoyd for the claims asserted in the *Theo* Lawsuit.

42.     An actual controversy exists between Nautilus, Hoyd, and the Theos, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policies;

b.     Find and declare that the *Theo* Lawsuit does not allege a claim for "property damage" against Hoyd;

c.     Find and declare that Nautilus has and had no duty under the Policies to defend Hoyd against the *Theo* Lawsuit, or to indemnify Hoyd for any judgment or settlement entered therein; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

## NO "OCCURRENCE"

43.     Nautilus adopts and realleges the allegations in paragraphs 1 through 42 of its Complaint for Declaratory Judgment as paragraph 43 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

44.     Coverage A of the Policies provide, in relevant part, the following with respect to the liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
* * *
**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *

* * *

    **b.**      This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**      The "bodily injury" or "property damage" occurs during the policy period; and

* * *

(Exs. B and C.)

45.      The Policies define the term "occurrence" as follows:

**SECTION V – DEFINITIONS**

* * *

**13.**      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

(Exs. B and C.)

46.      In this case, the totality of the *Theo* Lawsuit (as it relates to Hoyd) arises from allegations that Hoyd failed to perform construction work in a workmanlike manner and violated the Illinois Consumer Fraud and Deceptive Practices Act and the Home Repair and Remodeling Act. (Ex. A.)

9

47.     Pursuant to the plain language of the Policies, the claims asserted in the *Theo* Lawsuit do not constitute an "occurrence", as that term is defined by the Policies, and, as such, the claims asserted in the *Theo* Lawsuit do not trigger coverage under the terms of the Policies.

48.     Accordingly, Nautilus has and had no duty to defend and/or indemnify Hoyd for the claims asserted in the *Theo* Lawsuit.

49.     An actual controversy exists between Nautilus, Hoyd, and the Theos, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policies;

b.      Find and declare that the claims asserted in the *Theo* Lawsuit does not allege an "occurrence" as defined under the Policies;

c.      Find and declare that Nautilus has and had no duty under the Policies to defend Hoyd against the *Theo* Lawsuit or to indemnify Hoyd for any judgment or settlement entered in the *Theo* Lawsuit.

d.      Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## THE "BUSINESS RISK" EXCLUSIONS BAR COVERAGE

50.     Nautilus adopts and realleges the allegations in paragraphs 1 through 49 of its Complaint for Declaratory Judgment as paragraph 50 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

51.     The Policies incorporate the following exclusions commonly known as the "business risk" exclusions:

**j.** **Damage To Property**

"Property damage" to:

\* \* \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\* \* \*

**k.** **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.** **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damages arises was performed on your behalf by a subcontractor.

**m.** **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A "defect, deficiency, inadequacy or dangerous condition" in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

11

\* \* \*

(Exs. B and C.)

52.     The Policies define the terms "impaired property," "products-completed operations

hazard," "your product" and "your work" as follows:

**SECTION V – DEFINITIONS**
\* \* \*

**8.**     "Impaired Property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **a.**     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**     You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

    **a.**     The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**     Your fulfilling the terms of the contract or agreement.
\* \* \*

**16.**     "Products-completed operations hazard":

    **a.**     Includes all "bodily injury" or "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**     Products that are still in your physical possession; or

        **(2)**     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**     When all of the work called for in your contract has been completed.

            **(b)**     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\* \* \*

21. "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

 **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

 **(2)** The providing of or failure to provide warnings or instructions."

        \* \* \*

(Exs. B and C.)

53. One or more of the Policies' "business risk" exclusions (exclusions j.(5), j.(6), k., l., and/or m.) preclude coverage because the damages asserted in the *Theo* Lawsuit relate solely to the repair and replacement of Hoyd's faulty work, and no consequential damages are asserted. (Ex. A.)

54. Accordingly, Nautilus had and has no duty to defend or indemnify Hoyd for those claims asserted in the *Theo* Lawsuit.

55. An actual controversy exists between Nautilus, Hoyd, and the Theos, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

 a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policies;

 b. Find and declare that the Policies' "business risk exclusions" bar coverage for the claims asserted in the *Theo* Lawsuit;

 c. Find and declare that Nautilus has and had no duty under the Policies to defend Hoyd against the *Theo* Lawsuit or to indemnify Hoyd for any judgment or settlement entered in the *Theo* Lawsuit.

 d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## PUNITIVE DAMAGES

56.     Nautilus adopts and realleges the allegations in paragraphs 1 through 55 of its

Complaint for Declaratory Judgment as paragraph 56 of Count IV of its Complaint for Declaratory

Judgment as if fully set forth herein.

57.     The Policies incorporate the following exclusion relating to Punitive or Exemplary

Damages:

### EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
* * *

The following exclusion is **added** to **2. Exclusions** of **Section I:**

This insurance does not apply to punitive or exemplary damages.
* * *

(Exs. B and C.) (Hereinafter, the "Punitive Damages Exclusion").

58.     Count II of the *Theo* Lawsuit asserts violations of the Illinois Consumer Fraud and

Deceptive Practices Act and other statues that could potentially expose Hoyd to punitive or

exemplary damages.  (Ex. A.)

59.     In the event that any punitive or exemplary damages are awarded in the *Theo*

Lawsuit, the Punitive Damages Exclusion would bar coverage for those damages.

60.     Additionally, it is against the public policy of Illinois to insure punitive damages

that are directly assessed against an insured.

61.     Accordingly, in the event any punitive damages are awarded in the *Theo* Lawsuit,

coverage for those damages are barred as a matter of law.

62.     An actual controversy exists between Nautilus, Hoyd, and the Theos, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policies;

b.     Find and declare that the Policies' "Punitive Damages Exclusion" bars coverage for any award of punitive or exemplary damages in the *Theo* Lawsuit;

c.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

**TRAUB, LIEBERMAN, STRAUS & SHREWSBERRY LLP**

/s/ Dana A Rice
Dana A. Rice
Adam P. Joffe
303 W. Madison Street
Suite 1200
Chicago, IL 60606
P: 332-3900
F: 312-332-3908
drice@tlsslaw.com
ajoffe@tlsslaw.com

**ATTORNEYS FOR
NAUTILUS INSURANCE COMPANY**